# EXHIBIT A

BEFORE THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.

| | |
|---|---|
| In the Matter of the Arbitration<br>Between:<br><br>Donald F. Dailey, Jr.<br><br>Claimants<br><br>v.<br><br>Legg Mason Wood Walker, Incorporated,<br>and John K. Russell, Individually and as an Agent<br>Thereof, and Elizabeth M. Wolf, Individually and<br>As an Agent and Employee Thereof.<br><br>Respondents | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No.: 06-02818 |

## **MOTION TO DISMISS**

Legg Mason Wood Walker, Incorporated ("Legg Mason"), John K. Russell ("Mr. Russell") and Elizabeth M. Wolf ("Ms. Wolf")[1] (collectively, Legg Mason, Mr. Russell and Ms. Wolf may hereafter be referred to as "Respondents"), respectfully submit this Motion to Dismiss Statement of Claim Based on Statute of Limitations and in support thereof state as follows:

---

[1] Ms. Wolf previously filed a separate motion to dismiss based upon the fact that Ms. Wolf never met Claimant or serviced his accounts and that as such every single claim of wrongdoing involving Ms. Wolf is a bald and blatant misrepresentation. (See Statement of Answer and Motion to Dismiss Ms. Wolf at 1-2). By letter dated November 27, 2006, counsel for Claimant conceded that Ms. Wolf had been mistakenly named in this arbitration due to a miscommunication between him and his client and consented to the granting of the Motion to Dismiss Ms. Wolf. Accordingly, regardless of the outcome of the instant motion to dismiss, Ms. Wolf respectfully requests the entry of an interim Stipulated Award dismissing her from this proceeding and ordering the expungement of her U-4 based upon the facts that the claims against her are false and that she was not actually involved in any of the allegations in the Statement of Claim consistent with the expungement guidelines set forth in Rule 2130.

## INTRODUCTION

While the haphazardly cobbled together Statement of Claim in this matter has multiple fatal flaws, one of these fatal flaws mandates the pre-hearing dismissal of all (or at a minimum all except one)[2] of the claims brought in this arbitration – **the claims brought in this arbitration are time-barred by the applicable limitations periods**.

Claimant cannot dispute that all of his funds and investments had been transferred out of Legg Mason by March 2003, yet Claimant did not file the Statement of Claim in this matter until June 2006 - **a period of 3¼ years**. As will be set forth in greater detail below, pursuant to statute and/or applicable case law, the limitations period for each cause of action brought by Claimant in this matter is shorter than this 3¼ year period. Thus, the statute of limitations, applicable to each alleged cause of action brought by Claimant, had expired prior to the commencement of this arbitration, and each stale cause of action must be dismissed as a result. In the alternative, if the Panel elects to apply the alternate six-year limitations period to Claimant's UTP/CPL claims, then Respondents respectfully request that this Panel issue an order stating that Claimant is entitled to recovery if and only if he can prove that Respondents fraudulently engaged in "unfair or deceptive acts or practices" as defined by the UTP/CPL.

## ARGUMENT

As listed on pages 7-16 of the Statement of Claim, the Claimant asserts six separate, alleged causes of action for - 1) Section 10b Fraud of the Securities and

---

[2] Claimant has brought a cause of action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTP/CPL"). As will be set forth in greater detail below, there is a split of authority among Pennsylvania courts as to whether a two-year or a six-year limitations period applies to actions brought pursuant to the UTP/CPL.

Exchange Act of 1934; 2) Common Law Fraud and Deceit; 3) Breach of Fiduciary Duty; 4) Negligent Supervision; 5) Breach of Contract; and 6) Pennsylvania UTP/CPL. Respondents will now address *seriatim,* below, the statutes and/or case-law which demonstrate that all of the above causes of action are time-barred by applicable limitations periods.

## I.   Claims Subject To Express Two-Year Limitations Periods

As will be set forth in greater detail below, Claimant's first four alleged claims are all subject to express two-year limitations periods.  As more than three years had passed prior to the filing of the Statement of Claim in this matter, these first four alleged claims must be dismissed as time-barred.

### A.  Section 10b Fraud of the Securities and Exchange Act of 1934

The first cause of action for Section 10b Fraud of the Securities and Exchange Act of 1934 is governed by a limitations period of two years.  In Re Exxon Mobil Corp. Securities Litigation, 500 F.3d 189, 194 (3d Cir. 2007) (a copy of this case is attached hereto as Exhibit A for the Panel's convenience).

### B.  Common Law Fraud and Deceit, Breach of Fiduciary Duty and Negligent Supervision

The claims for common law fraud and deceit, breach of fiduciary duty and negligent supervision all are governed by 42 Pa. C.S. § 5524(7) which states:

> The following actions and proceedings must be commenced within **two years**: ... (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass including deceit or fraud (emphasis added).

- 3 -

**C.    Any Attempt To Rely On The "Discovery Rule" To Attempt To Overcome These Two-Year Limitations Periods Would Be Misplaced**

In what would be proven to be a futile effort to resuscitate these four expired claims, Claimant may attempt to rely on the "discovery rule." As will be explained below, any arguments in support of such an attempted reliance on the "discovery rule" are unavailing and should be rejected by this Panel. Historically, a claim generally accrued when the wrong was committed, not when it was discovered. However, present Pennsylvania law follows the "discovery rule," under which a claim will not arise until a plaintiff knows or reasonably should know of the wrong." While the "discovery rule" may have the effect of extending the limitations period under certain circumstances, the "discovery rule" is inapplicable where the injury is discovered or reasonably discoverable through the exercise of reasonable diligence within the initial statutory period. Pocono International Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471-72 (1983) (a copy of this case is attached hereto as Exhibit B). Moreover, the party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence. As stated by the court in Dalrymple v. Brown, 701 A.2d 164, 167 (1997) (a copy of this case is attached hereto as Exhibit C), "the very essence of the discovery rule in Pennsylvania is that it applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury."

Applying the above rationale to the present matter, it is indisputable that the Claimant's monthly account statements put him on notice of his potential claims as a matter of law back in 2000 and 2001, when his account experienced sharp fluctuations in value in a fashion directly contrary to his alleged instructions to Respondents that "he

was very conservative and wanted his money to grow, but to be protected from loss to the point where yield was less important than preservation of capital." See Statement of Claim at 2. Multiple courts across the country have declined to give brokerage investors the protection of the "discovery rule" under virtually identical circumstances. For instance, in McKuin v. RF Advisors, LLC, 2005 WL 1773908 at 4 (E.D. Mo. June 26, 2005) (a copy of this case is attached hereto as Exhibit D), that court found that under the discovery rule, the statute of limitations had expired for a securities claim brought under federal law. The court stated that: "[w]hile the court agrees with Plaintiffs that the extreme losses in their accounts did not necessarily alert them to the unsuitability of their investments, the losses did trigger a duty to investigate the situation further." Thus, the losses reflected on Claimant's account statements and tax returns well prior to even the commencement of the applicable two-year limitations period put him on notice of any potential claims and mandate the dismissal of his alleged causes of action for section 10b fraud of the Securities and Exchange Act of 1934, common law fraud and deceit, breach of fiduciary duty and negligent supervision.

## II.    Breach of Contract Claim

In including an alleged breach of contract claim, Claimant has simply attempted to masquerade his tort claims as a breach of contract claim in order to attempt to take advantage of the four-year limitations period for breach of contract actions. Pennsylvania courts routinely reject such attempts and apply the proper two-year limitations period for tort actions. As stated by the court in Shamberg v. Charen, Palitz & Rosenberg, 1991 WL 29915 (E.D.Pa. 1991) (a copy of this case is attached hereto as Exhibit E):

- 5 -

> We are in agreement with Judge Fullam's reasoning, and therefore feel disinclined to allow any plaintiff to circumvent the two-year limitations period on malpractice actions based upon allegations of professional negligence [or fraud] by presenting such an action in the guise of a breach of contract action.

Applying the above rationale to this matter, Claimant's attempt to masquerade his other claims as a breach of contract claim is patently obvious from the face of the Statement of Claim itself. Other than using the words "breach of contract" Claimant's alleged count for breach of contract at pages 14-15 of the Statement of Claim does not even discuss facts or legal concepts which relate to any alleged breach of contract, nor does the count identify a single written contractual provision allegedly breached by Respondents. Instead, the alleged count for "breach of contract" relies upon vague discussions of industry standards and actually devotes an entire paragraph to discussing alleged breaches of fiduciary duty previously covered by the allegations in Claimant's third count for alleged breach of fiduciary duty. Accordingly, as Claimant's "breach of contract" claim is nothing more than an indirect way of restating his other claims which are subject to a two-year limitations period, Claimant's "breach of contract" count must be dismissed as time-barred as well.

### III.   Pennsylvania UTP/CPL

The final count of the Statement of Claim for alleged violation of the Pennsylvania UTP/CPL presents the one real grey area to be decided in connection with this motion. Respondents in this matter take the position that this Panel should follow the line of cases which apply a two-year statute of limitations to UTP/CPL claims. See Cramer v. Inter-County Hospitalization Plan Inc., 46 Pa. D. & C.3d 288, 290 (Lancaster

1986); David Jeffrey Ltd. V. Lucente, 7 Pa. D & C.4[th] 558 (Montgomery 1990) (copies of

both cases are attached hereto as Exhibit F). As explained by the Cramer court:

> No specific statute of limitations is provided in the UTP/CPL, but as cited earlier, the statute is intended to prevent fraud, Commonwealth v. Monumental, supra, and, therefore, the appropriate statute of limitations is the one for fraud generally, 42 Pa.C.S. § 5524, pursuant to which the limitations period is two years.

Respondents certainly acknowledge the line of cases which allow for a six-year statute of

limitations for UTP/CPL actions. See e.g. Algrant v. Evergreen valley Nurseries, Ltd.,

941 F. Supp. 495, 499 (E.D.Pa. 1996) (a copy of this case is attached hereto as Exhibit

G). Nevertheless, Respondents respectfully submit that Claimant should not be allowed

to rely on a marginally applicable statute to resuscitate stale claims. However, if the

Panel does elect to apply a six-year statute of limitations, Respondents respectfully

request that the Panel rule that Claimant must prove the elements of fraud in order to

prevail on the UTP/CPL claim since "the statute is intended to prevent fraud."


## CONCLUSION

For the reasons set forth above, Respondents respectfully request that this Panel

dismiss all claims brought by Claimant in this matter as time-barred. In the alternative, if

this Panel allows Claimant's UTP/CPL claim to survive, Respondents respectfully

request that Claimant be required to prove all elements of fraud in connection with that

claim.

Respectfully submitted,

Jason W. Gaarder
Associate General Counsel
Legg Mason & Co., LLC
100 Light Street, 32nd Floor
Baltimore, Maryland 21202
(410) 454-3321

Counsel for Respondents
Legg Mason Wood Walker, Incorporated,
John K. Russell and Elizabeth M. Wolf

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26 th day of February 2008, I served via first class mail, postage prepaid, a copy of the foregoing Motion to Dismiss upon the following counsel of record:

Arnold Y. Steinberg, P.C.
Attorney at Law
The Washington Plaza
#1504
1420 Centre Avenue
Pittsburgh, PA 15219
Counsel for Claimant

Jason W. Gaarder

# EXHIBIT B

RECEIVED
APR 0 1 2008
BY:-------------------

IN THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.
ARBITRATION DIVISION - NASD REGULATION, INC.

IN RE:

DONALD F. DAILEY, JR.,

CASE NO. 06-02818

                    Claimant,

-vs-

LEGG MASON WOOD WALKER, INC.,
and JOHN K. RUSSELL,
Individually and as an Agent
Thereof, and ELIZABETH M. WOLF,
Individually and as an Agent
and Employee thereof.,

                    Respondents.
_____/

## OPPOSITION TO MOTION TO DISMISS

NOW COMES the Claimant, through Undersigned counsel, to Oppose the pending Motion to Dismiss, based upon Statute of Limitations Grounds,[1] as follows:


## A MOTION TO DISMISS - IN GENERAL

The Federal Arbitration Act guarantees a hearing to a party who wants one. The Claimant wants a hearing. The Claimant cannot respond adequately to the issues raised by the Respondents' "Motion" without an opportunity to present evidence and cross-examine adverse witnesses. Thus, the Respondent's "Motion to Dismiss" should not decided by the Panel until after an evidentiary hearing.

---

[1] The Panel is reminded that this case falls under the former NASD Code of Arbitration.

The Respondent wants to prevent a hearing for the same reasons that the Claimant is seeking to have one - a hearing will expose the full depth and breadth of the Respondents' breaches of duty owed to him.   Deciding that Motion prior to the presentation of evidence in this case would deprive the Claimant of the one thing that he came to arbitration to receive - an opportunity to be heard.

One of the purposes of this pleading is to address Respondent's legal arguments regarding statutes of limitations, although the Claimant reserves the right to do that in conjunction with the evidentiary hearing and/or as directed by the Panel.

## THE FEDERAL ARBITRATION ACT

Federal law (9 U.S.C. Section 10) requires an evidentiary hearing in arbitration unless the parties expressly waive that right.   In fact, the Federal Arbitration Act specifically provides that the U.S. District Court may vacate an arbitration award:

> "Where the arbitrators were guilty of misconduct ... in
> refusing to hear evidence pertinent and material to the
> controversy."   9 U.S.C. Section 10.

It is hard to imagine a clearer affirmation of the right to a hearing. Evidence which will come forth at the hearing will be material to the issues raised by Respondents' Motion to Dismiss.

## CASE LAW REQUIRES A HEARING

Case law also supports the Claimant's right to a hearing. Federal case law addresses the right to present evidence in

ARNOLD Y. STEINBERG, P.C. - Attorney at Law - 1420 Centre Avenue - Suite 1504
Pittsburgh, Pennsylvania  15219 - Telephone (412) 434-1190 - Facsimile (412) 434-1131

2

arbitration proceedings. Both decisions support the Claimant's assertion that he is entitled to a hearing on the merits.

In <u>Prudential Securities, Inc. v. John B. Dalton</u>, 929 F.Supp. 1411 (N.D. Okla. 1996), a federal district court vacated an arbitration award that granted a pre-hearing motion to dismiss. The court found the arbitration panel "guilty of misconduct in refusing to hear evidence pertinent and material to the controversy." The <u>Dalton</u> court went on to explain its position as follows:

> The issue before the Court at this time is not who is ultimately going to prevail. The issue is whether or not claimant Dalton was granted a fair hearing under the Arbitration Code to offer evidence in support of his factual claims. As previously stated, the Court concludes [that] by sustaining the motion to dismiss of Prudential the arbitration panel improperly denied claimant the right to a fundamentally fair hearing. Therefore, the Court hereby vacates the underlying arbitration award for the reasons stated above and directs the parties and the matter be remanded to a duly constituted NASD arbitration panel to proceed with an evidentiary hearing and ruling on the merits, within six months from this date.

## THE STATUTE OF LIMITATIONS ARGUMENT DOES NOT APPLY

The Claimant would also argue that resolution of statute of limitations issues involves questions of fact that require an evidentiary hearing. Thus, even if it is assumed, for purposes of this Motion (and it is not), that statutes of limitation are applicable in private contractual arbitration proceedings, the determination of when the Claimant became aware of the Respondents' violations is a disputed question of fact. Factual questions are resolved through the presentation of evidence, not through legal

arguments. Further, in a court setting, the existence of a genuine issue of material fact precludes the Granting of a Motion to Dismiss.

Evidence regarding when the Claimant discovered the Respondents' wrongdoing can be presented adequately only at an evidentiary hearing. An evidentiary hearing therefore would be necessary in this case even if the federal arbitration statutes did not require one in all cases.

In the industry, other panels have decided against Dismissal Motions Practice. The bulk of the arbitration experience of Undersigned Counsel, since 1986, has been at securities industry arbitration fora, primarily the National Association of Securities Dealers ("NASD"), now known as "FINRA." The issues of dispositive motion practice (based variously on statutes of limitation, the (former) NASD's "six-year rule," and other theories) and the right to a hearing have arisen on numerous occasions in NASD proceedings. It is been the experience of Undersigned Counsel, overwhelmingly, that arbitration panels, when presented with the law supporting a public customer's right to a hearing in arbitration proceedings, have declined to entertain pre-hearing dismissal motions.

Such rulings are not an accident. Arbitration is supposed to be a streamlined process in which parties give up some of the elaborate rights that they would have in a court proceeding. What they get in return is the guarantee that they will have a simple hearing. The Panel is urged not to allow the Respondents to take that away, and is requested, instead, to insist upon an evidentiary

ARNOLD Y. STEINBERG, P.C. - Attorney at Law - 1420 Centre Avenue - Suite 1504
Pittsburgh, Pennsylvania  15219 - Telephone (412) 434-1190 - Facsimile (412) 434-1131

4

hearing before deciding this case.

### CASE LAW SUPPORTS THE CLAIMANT'S POSITION

The following authority provides that arbitrators are not required to apply the statutes of limitations, because those limitations apply to "actions," which term does not include arbitrations or due to the general principle that arbitrators are not required to follow the law due to their special nature as an equitable, private dispute resolution mechanism designed to avoid litigation in the courts:

1.   Skidmore, Owings & Merrill v. Connecticut General, 197 A.2d 83 (Conn. 1963)(an arbitration is not the bringing of an action within the meaning of that phrase as used in the statute of limitations);

2.   Har-Mar v. Thorsen & Thorshov, 218 N.W.2d 751 (Minn. 1974) (based on the special nature of arbitration proceedings and both the statutory and common-law meaning of the term "action," we feel compelled to hold that the statute of limitations was not intended to bar arbitration of the claimant's claim solely because such claim would be barred if asserted in an action in court);

3.   Lewiston Firefighters Assoc. v. City of Lewiston, 354 A.2d 154 (Me. 1976) (Arbitration is not an action at law, and the statute is not, therefore, an automatic bar to the Firefighters recovery);

4.   Son Shipping v. DeFosse & Tanghe, 199 F.2d 687 (2d Cir. 1952) (Arbitration is not within the term "suit" as used in the

statute of limitations. Instead, it is the performance of a contract providing for the resolution of controversy without suit);

5.   SCM Corp. v. Fisher Park Lane, 358 N.E.2d 1024, 390 N.Y.S. 2d 670 (1973) (Arbitrators have the power to fashion remedies appropriate to resolving the dispute before them, including reformation of a contract, often applying principles more liberal than judicial equity. The function of arbitrators is to "find a just solution" to the controversy between the parties.);

6.   Associated Teachers of Huntington v. Board of Education, 33 N.Y. 2d 229 (1973) (Absent a provision to the contrary in the arbitration agreement, arbitrators are not bound by principles of substantive law or rules of evidence . . .Their duty is to reach a just result regardless of the technicalities . . .);

7.   Town of Haverstraw v. Rockland Patrolman's Benevolent Assoc., 481 N.E.2d 248, 491 N.Y.S. 2d 616 (1985) (Arbitrator may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be . . .);

8.   Raisler Corp. v. NYC Housing Authority, 32 N.Y. 2d 274 (1973)(absent provision to the contrary in the arbitration agreement, arbitrators are not to bound by principles of substantive law or rules of evidence);

9.   NCR Corp. v. CBS Liquor Control dba Acme Cash Register, 847 F. Supp. 168 (S.D. Ohio 1993) (the effect of a statute of limitations is to bar an action at law, not arbitration);

10.   Carpenter v. Pomerantz, 634 N.E.2d 587 (Mass. App. 1994) (as used in statutes of limitations, the word "action" is

consistently construed to pertain to court proceedings, not arbitration);

11. <u>Miele v. Prudential</u>, 656 So.2d 470 (Fla. 1995) (arbitration is not considered a "civil action").

As further support, the Panel is also directed to the following treatises:

1. S. Jaffe, <u>Broker-Dealers and Securities Markets, A Guide to the Regulatory Process</u>, §17.01 - "Arbitration forums, on the other hand, often do not hesitate to apply the standards of the organization under whose heading the proceeding is conducted. They are not bound to precise legal standards in their decisions and, as noted infra, appeal rights are limited. They therefore have a freedom to base decisions upon the standards of their own or other self-regulatory organizations which is often denied to a trial court."

2. <u>Domke on Commercial Arbitration</u>, §25:01: "Arbitrators in reaching their determination may disregard the strict and traditional rules of law. Moreover, parties do not expect the arbitrators to make decisions according to rules, but rather, especially when arbitrators are not lawyers, on the basis of their experience, knowledge of the customs of the trade, and fair and good sense for equitable relief."

3. Also from <u>Domke</u> - and appearing at the front of the *SICA Arbitrators Manual*: "Equity is justice in that it goes beyond the written law. And it is equitable to prefer arbitration to the law court, for the arbitrator keeps equity in view, whereas the judge

looks only to the law, and the reason why arbitrators were appointed was that equity might prevail."

## THE SUBSTANTIVE LAW OF STATUTES OF LIMITATIONS

### The Discovery Rule

Under Pennsylvania's discovery rule, the statute of limitations will not begin to run until "the plaintiff reasonably knows or reasonably should know: (1) that he has been injured, and (2) that his injury as been caused by another party's conduct." In re: Mushroom Tranp. Co., Inc., 382 F.3d 325, 338 (3rd Cir. 2004)(quoting In re TMI Litig., 89 F.3d 1106, 1116 (3rd Cir. 1996); Urland v. Merrell-Dow Pharmaceuticals, 822 F.2d 1268, 1271 (3rd Cir. 1987)("It is well-established that Pennsylvania law recognizes an exception to the statute of limitations "which delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause").

"A plaintiff who wishes to assert the discovery rule may do so in one of two ways: 1) by pleading in the complaint sufficient facts to sustain application of the rule; or 2) by waiting until the defendant asserts a statute of limitations defense in new matter and then raising the discovery rule in a responsive pleading." Prevish v. Northwest Medical Center Oil city Campus, 692 A.2d 192,197 (Pa. Super. 1997).

## Fraudulent Concealment

It is generally accepted that the three elements which must be alleged to establish fraudulent concealment are (1) wrongful concealment of its actions by defendant; (2) failure of the plaintiff to discovery the operative facts or the basis of his cause of action within the limitations periods; and (3) plaintiff's due diligence until discovery of the facts.  Bethelehem Steel Corp. v. Fishbach and Moore, Inc., 641 F. Supp. 271, 273 (E.D. Pa. 1986).

## The Statutes of Limitations

The applicable statutes of limitations, without the discovery rule or fraudulent concealment being applied, are as follows:

1.    Fraud is subject to a two-year statute of limitations. 42 Pa. C.S.A. § 5524; AAMCO Transmissions, Inc. v. Harris, 759 F.Supp. 1141, 1144 (E.D. Pa. 1991);

2.    Breach of contract is subject to a four-year statute of limitations.  42 Pa. C.S.A. § 5525(8);

3.    Claims under the UTP/CPL is subject to a six-year statute of limitations.  42 Pa. C.S.A. § 5527(b); Gabriel v. O'Hara, 534 A.2d 388,394 (1987) providing that the six-year "catchall" limitations period applies to actions under UTP-CPL; Falbo v. State Farm Life Ins. Co., No. CIV. A 96-5540, 1997 WL 116988, at *9 (E.D. Pa. March 13, 1997).

## CONCLUSION

Federal and state arbitration statutes and cases entitle the Claimant to be heard unless he waives that right.  The Claimant has

not waived that right.

Fairness requires that the parties have their "day in court." Fairness also requires that the parties be given an opportunity to present their best evidence to the arbitrator and to cross-examine witnesses.   Fairness   further   requires   that   parties   not   be confronted with an adverse, dispositive ruling on their case before they have even been introduced to the arbitrator.

It should be noted that the Claimant is not asking the Panel for a ruling that would deprive the Respondents of any of their potential defenses. The Respondents will be free to argue its defenses after the evidence is presented.  The Claimant only wants to present his evidence.  All the Claimant wants is a hearing.

The Claimant has suffered substantial losses as a result of the Respondents' violations of the contract which bound them to follow the rules and regulations of the securities industry.   If the evidentiary hearing is replaced by the Granting of this prehearing Motion to Dismiss, the Claimant will have been deprived of the one thing he came to arbitration to receive - an opportunity to be heard by a neutral arbitration panel.

ARNOLD Y. STEINBERG. P.C.
INVESTORS' RIGHTS, INC.
Attorney for Claimant
1420 Centre Avenue
Suite # 1504
Pittsburgh, PA  15219
(412) 434-1190
(412) 434-1131 (FAX)
Penna. Bar No. 26495

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original and three copies of the foregoing has been sent to FINRA Regulation, Inc., ATTN: Elizabeth A. Walsh, Esquire, at 55 West Monroe Street, Suite 2600, Chicago, IL 60603, and that a true and correct copy of the foregoing has been sent by first-class mail, postage prepaid, to JASON W. GAARDER, ESQUIRE, as Counsel for the Respondents, at 100 Light Street, 32nd Floor, Baltimore, MD 21202, with a telefax transmission being sent to both, on this 25th day of March, 2008.

ARNOLD Y. STEINBERG, ESQUIRE

ARNOLD Y. STEINBERG, P.C. - Attorney at Law - 1420 Centre Avenue - Suite 1504
Pittsburgh, Pennsylvania  15219 - Telephone (412) 434-1190 - Facsimile (412) 434-1131

11

# EXHIBIT C

BEFORE THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.

|  |  |  |
|---|---|---|
| In the Matter of the Arbitration<br>   Between: | ) | |
| | ) | |
| | ) | |
| Donald F. Dailey, Jr. | ) | |
| | ) | |
| Claimant | ) | Case No.: 06-02818 |
| | ) | |
| v. | ) | |
| | ) | |
| Legg Mason Wood Walker, Incorporated, | ) | |
| and John K. Russell, Individually and as an Agent | ) | |
| Thereof, and Elizabeth M. Wolf, Individually and | ) | |
| As an Agent and Employee Thereof. | ) | |
| | ) | |
| Respondents | ) | |

## RESPONDENTS' REPLY TO OPPOSITION TO MOTION TO DISMISS

Respondents, Legg Mason Wood Walker, Incorporated ("Legg Mason"), John K. Russell ("Mr. Russell") and Elizabeth M. Wolf ("Ms. Wolf") (collectively, Legg Mason, Mr. Russell and Ms. Wolf may hereafter be referred to as "Respondents") by and through their undersigned counsel, respectfully submit this Reply to Claimant's Opposition to Motion to Dismiss (Claimant's Opposition to Motion to Dismiss may hereafter be referred to as "Claimant's Opposition") (Respondents' Motion to Dismiss may hereafter be referred to as the "Motion").

## I.   PRELIMINARY STATEMENT

Claimant's Opposition does not dispute that Claimant has had absolutely no business dealings with Legg Mason, whatsoever, since March 2003, when Claimant transferred his accounts out of Legg Mason.  Claimant also does not dispute that he

waited well over three years after transferring his accounts out of Legg Mason to commence this arbitration, in the summer of 2006. Indeed, Claimant's Opposition is entirely unresponsive to the substance of the Motion and astonishingly makes no attempt to even distinguish a single case cited in the Motion; almost as if Claimant's Opposition was produced in a vacuum rather than in response to another pleading. Furthermore, Claimant's Opposition does not even bother to reference or discuss a single fact or issue unique to this case. Indeed, Claimant's Opposition could have been submitted, "as-is," in response to just about any pre-hearing motion to dismiss on limitations grounds in any similar arbitration.

For instance, Claimant spends over 70% of Claimant's Opposition recycling demonstrably wrong, boilerplate, pablum that pre-hearing motions to dismiss on limitations grounds are all but prohibited in NASD/FINRA arbitrations.[1] Nothing could be further from the truth. Claimant's boilerplate argument does not cite a single case involving the pre-hearing dismissal of an NASD/FINRA arbitration on limitations grounds and there is an overwhelming plethora of authority specifically holding that pre-hearing dismissals on limitations grounds in NASD/FINRA arbitrations are a standard and thoroughly accepted practice. Indeed, as claimants' counsels continue to try and bring stale claims based upon the technology market downturn which began in March 2000, more and more panels are dismissing those claims as stale. Tellingly, since 2006 (six years after March 2000), undersigned counsel has been involved with four NASD/FINRA arbitrations which have been dismissed on limitations grounds at the pre-

---

[1] Due to recent SRO consolidations and alterations, the instant matter is now a FINRA arbitration governed by the former NASD Code of Arbitration Procedure. As such, this matter and prior FINRA arbitrations governed by the NASD Code of Arbitration Procedure along with prior NASD arbitrations governed by the NASD Code of Arbitration Procedure will be generically referred to herein as "NASD/FINRA arbitration(s)."

hearing stage, which represents a majority of pre-hearing motions to dismiss on limitations grounds filed by or at the direction of undersigned counsel since 2006 (Copies of the awards or orders granting these four dismissals are attached hereto as Exhibit A). Indeed, the latest dismissal was granted just over two weeks ago by a Panel in an NASD/FINRA arbitration with a situs in the State of Pennsylvania applying the exact same substantive law and exact same NASD Code of Arbitration Procedure to be applied by this Panel.

Claimant's secondary argument at least retreats from the abstract, procedural arena and purports to raise a substantive issue. This last gasp attempts in vain to create a disputed issue of fact as to whether Claimant's "leisurely discovery of the full details of the alleged scheme" (Koke v. Stifel, Nicolaus & Co., Inc., 620 F2d 1340, 1343 (8th Cir. 1980) (a cope of the Koke decision is attached hereto as Exhibit B)) should be excused by the "discovery rule" or the concept of "fraudulent concealment." As will be set forth in greater detail below, no such factual issue exists as Claimant's meritless attempt to conjure up such an issue completely ignores the exceedingly strict legal limitations placed upon parties attempting to fall within the purview of the "discovery rule" and/or "fraudulent concealment" by Pennsylvania courts as well as Claimant's clear legal duty to exercise "reasonable diligence."

In sum and as will be set forth in greater detail below, the primary argument and the secondary argument in Claimants' Opposition both are directly and irrefutably belied by applicable rules, applicable arbitration awards, applicable case-law or some combination thereof. Feebly, rather than directly address any of these contravening authorities, Claimant simply chose to ignore them.

3

II.    **CLAIMANT'S PRIMARY ARGUMENT THAT PREHEARING MOTIONS TO DISMISS ARE ALL BUT PROHIBITED IN NASD/FINRA ARBITRATIONS IS DIRECTLY CONTRAVENED BY A PLETHORA OF AUTHORITY**

The first argument in Claimant's Opposition is so divorced from legal reality that it is directly belied by a cursory reading of multiple judicial opinions, NASD publications and countless NASD arbitration awards.  Claimant frivolously attempts to argue that motions to dismiss are all but prohibited in NASD/FINRA arbitrations.

Multiple courts have addressed Claimant's groundless argument head-on in cases specifically involving FINRA/NASD arbitrations.  As expressly stated by the United States Court of Appeals for the Tenth Circuit in Sheldon v. Vermonty:

> Although the NASD's procedural rules do not specifically address whether an arbitration panel has the authority to dismiss facially deficient claims with prejudice based solely on the pleadings, there is no express prohibition against such a procedure.  In addition, NASD's procedural rules expressly provide that "[t]he arbitrator(s) shall be empowered to award any relief that would be available in a court of law."  NASD Manual, § 10214.  Logically, this broad grant of authority should include the authority to dismiss facially deficient claims with prejudice, and we hold that a NASD arbitration panel has full authority to grant a pre-hearing motion to dismiss with prejudice based solely on the parties' pleadings so long as the dismissal does not deny a party fundamental fairness.

Sheldon v. Vermonty, 269 F. 3d 1202, 1206 (10th Cir. 2001).  See also, Warren v. Tacher, 114 F.Supp.2d 600, 602 (W.D.Ky. 2000) ("[t]he legal principle that Petitioners rely on is that NASD arbitrators lack the authority to dismiss claims without full-blown discovery and a full evidentiary hearing on the merits.  As stated previously the arbitrators do have such authority.") (Copies of the Sheldon and Warren cases are attached hereto as Exhibit C).  More importantly, a Pennsylvania court applying Pennsylvania law specifically relied on the Sheldon and Warren cases in holding, "[NASD] arbitrators may grant a

motion to dismiss without holding a full evidentiary hearing." Tricome v. Success Trade
Securities, 2006 WL 1451502 at 3 (E.D.Pa. 2006) (A copy of the Tricome case is
attached hereto as Exhibit D). See also, Miller v. Prudential Bache Securities, Inc., 887
F.2d 128 (4th Cir. 1989) (Fourth Circuit Court of Appeals decision to uphold an NASD
Arbitration panel's dismissal of a case on statute of limitations grounds) (a copy of the
Miller case is attached hereto as Exhibit E).

The NASD Arbitrators Manual in a section entitled "Prehearing Motions" also
specifically notes that "Motions to Dismiss Because of the Passage of Time" are
appropriate for arbitrators to rule upon at the pre-hearing stage. See Arbitrators Manual
at 10-11 (attached hereto as Exhibit F).

Entirely consistent with all of the above, multiple arbitration panels in the last few
years have dismissed cases following motions to dismiss identical to the Motion. For
instance in Allen v. Morgan Stanley DW Inc., NASD Arbitration No. 05-04352 (January
31, 2006) the Panel wrote:

> The Panel was unpersuaded by counsel for Claimant's argument that the
> Panel lacked authority to dismiss claims that have been brought beyond
> the applicable statute of limitations. The Panel unanimously concluded
> that each and every one of Claimant's claims is time barred by the statutes
> of limitations applicable to it.

(A copy of the Allen award is attached hereto as Exhibit G).[2]

---

[2] For additional examples (although by no means an exhaustive list of every such award), see also, Noonan
v. Morgan Stanley, NASD Arbitration No. 06-02719 (November 1, 2006); Colvin v. Legg Mason Wood
Walker, Inc., NASD Arbitration No. 05-03399 (August 23, 2006); Higgins v. Allmerica Investments, Inc.,
NASD Arbitration No. 06-00815 (August 21, 2006); Copley v. Wilmington Brokerage Services Company,
NASD Arbitration No. 05-06633 (August 15, 2006); Silagy v. Woodbury Financial Services, Inc., NASD
Arbitration No. 05-06582 (August 14, 2006); Baldone v. Basic Investors, Inc., NASD Arbitration No. 05-
05395 (July 31, 2006); Gottlieb v. Legg Mason Wood Walker, Inc., NASD Arbitration No. 05-05336 (July
26, 2006); Duffy v. Sunamerica Securities, Inc., NASD Arbitration No. 05-05901 (July 24, 2006);
Dinwiddie v. McDonald Investments Inc., NASD Arbitration No. 05-01954 (May 2, 2006); Krouk v.

Finally, it should be noted again that in contrast to the plethora of authority noted above, Claimant does not identify a single judicial opinion, arbitration award, statute or rule prohibiting pre-hearing motions to dismiss on limitations grounds in NASD/FINRA arbitrations. The only case cited by Claimant which is even tangentially relevant through involving a motion to dismiss in an NASD/FINRA arbitration is easily distinguishable because the court based its decision on the factual merits of the case not on a blanket prohibition of motions to dismiss in NASD/FINRA arbitrations. Indeed, the court even went so far as to state, "in the appropriate case after hearing an argument, arbitrators would undoubtedly have authority to dismiss a claim which, on its face, does not state a claim entitling the claimant to relief…" <u>Prudential Securities, Inc. v. Dalton</u>, 929 F.Supp. 1411, 1417 (N.D.Okl. 1996) (a copy of the <u>Prudential</u> case is attached hereto as Exhibit I). Thus, the only tangentially relevant case cited in Claimant's Opposition actually supports Respondents' positions with respect to the instant motion. Accordingly, Claimant's primary argument in opposition to the Motion undeniably fails and the pre-hearing dismissal of all claims is appropriate in this matter.

## III. CLAIMANT'S SECONDARY ARGUMENT FAILS TO RAISE ANY FACTUAL ISSUES WHICH WOULD PRECLUDE DISMISSAL OF THIS MATTER

Claimant's secondary argument attempts in vain to raise a substantive issue. This last gasp purports to create a disputed issue of fact as to whether Claimant's "leisurely discovery of the full details of the alleged scheme" (<u>Koke v. Stifel, Nicolaus & Co., Inc.</u>, 620 F2d 1340, 1343 (8th Cir. 1980) (a cope of the <u>Koke</u> decision is attached hereto as

---

<u>Prudential Securities, Inc., et al</u>, NASD Arbitration No. 05-01049 (May 25, 2006); <u>Kuntz v. Merrill Lunch</u>, NASD Arbitration No. 05-04162 (March 13, 2006); <u>Lien v. Morgan Stanley</u>, NASD Arbitration No. 05-01345 (January 13, 2006) (Copies of these awards are attached hereto as Exhibit H).

Exhibit B)) should be excused by the "discovery rule." As will be set forth in greater detail below, no such factual issue exists as Claimant's meritless assertions that such an issue exist completely ignore the exceedingly strict interpretation of the "discovery rule" by Pennsylvania courts as well as multiple cases from other jurisdictions holding the "discovery rule" and "fraudulent concealment" inapplicable where a brokerage customer has regularly received accurate monthly account statements as in this matter.

The Supreme Court of Pennsylvania most recent in-depth pronouncements regarding the "discovery rule" came in 1997 in the case of <u>Dalrymple v. Brown</u>, 549 Pa. 217, 701 A.2d 164 (1997) (a copy of the <u>Dalrymple</u> case is attached hereto as Exhibit J). In broadly characterizing the "discovery rule" the <u>Dalrymple</u> court stated, "Pennsylvania courts have consistently applied the discovery rule **only in the most limited of circumstances**, where the plaintiff despite the exercise of reasonable diligence was unable to discover his or her injury or its cause" (emphasis added). <u>Dalrymple</u> at 231. Consistent therewith, the <u>Dalrymple</u> court was equally as restrictive in discussing the burden of proof and the application of the "reasonable diligence" standard in stating:

> The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence. ... The standard of reasonable diligence is objective, not subjective. It is not a standard of reasonable diligence unique to a particular plaintiff, but instead, a standard of reasonable diligence as applied to a "reasonable person." <u>Id.</u> at 224.

Based upon the above, Pennsylvania courts following <u>Dalrymple</u> have noted the "discovery rule" cannot be utilized as a matter of law where a plaintiff does not use "reasonable diligence" in the face of readily available information. For instance in <u>Cappelli v. York Operating Co.</u>, 711 A.2d 481, 488 (Superior Court 1998) (a copy of the <u>Cappelli</u> case is attached hereto as Exhibit K), the court held:

> The polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff. Failure to make inquiry when information is available **is failure to exercise reasonable diligence as a matter of law.** (emphasis added).

Multiple courts across the country have also held that failure to investigate further upon receipt of account statements reflecting losses in a brokerage account is a failure to use "reasonable diligence" as a matter of law. In the first instance, Respondents' previous citation to McKuin v. RF Advisors, LLC, 2005 WL 1773908 (E.D. Mo. June 26, 2005) (previously attached to the Motion as Exhibit D) is summarily ignored by Claimant's Opposition. As previously noted in the Motion, in determining that the plaintiff's claims were time-barred due to the failure to exercise reasonable diligence, the McKuin court wrote:

> Plaintiffs do not dispute that as a result of the daily account summaries, they had knowledge of the losses in their accounts more than one year prior to filing suit. (Plaintiffs' Memo in Opp., P. II-2). Next, while the Court agrees with Plaintiffs that the extreme losses in their accounts did not necessarily alert them to the unsuitability of their investments (Plaintiffs' Memo in Opp., P. II-3), the losses did trigger a duty to investigate the situation further. Ritchey, 244 F.3d at 639. In other words, because the pattern of extreme loss was in direct contradiction to Defendants' alleged representation that the investments were low-risk, safe and non-speculative, Plaintiffs had a duty to investigate the situation further. Id. at 640.

In this matter, the Statement of Claim alleges at least twice that Claimant communicated a desire to Legg Mason for conservative investments. At page 2, the Statement of Claim alleges that Claimant, "was very conservative and wanted his money to grow, but to be protected from loss to the point where yield was less important than preservation of capita," and at page 3 the Statement of Claim alleges, "[o]nly safe investments which would tend to preserve the invested funds of the Claimant were to be purchased." The

evidence is also uncontroverted that by November of 2000 or well over five years prior to the filing of the Statement of Claim, Claimant's account statements reflected unrealized losses of well over $100,000, "in direct contradiction to [Respondents'] alleged representation that the investments were low-risk, safe and non-speculative." Id.

Thus, in applying the above rationale to this matter, as Claimant alleges that he expressed a desire for conservative investments and it is uncontroverted that he received account statements reflecting significant losses, **just as in McKuin**, Claimant's failure to exercise "reasonable diligence" is fatal to Claimant's attempt to fall under the protection of the "discovery rule." Indeed, as previously noted several times, Claimant's Opposition does not even attempt to distinguish McKuin; most likely because it is so directly on point, they cannot. See also, J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1258 (1st Cir. 1996) (monthly statements put plaintiff on inquiry notice) (attached hereto as Exhibit L); Koke v. Stifel, Nicolaus & Co., Inc., 620 F.2d 1340, 1343-44 (8th Cir. 1980) (previously referenced above and attached hereto as Exhibit B) (stating that "[i]nvestors are not free to ignore warning signals[,]" ruling that furnishing of confirmation slips and account statements "were sufficient to require the initiation of an inquiry.").[3]

The above analysis is equally applicable and equally fatal to Claimant's arguments that the doctrine of fraudulent concealment should somehow excuse his

---

[3] See also, Freundt-Alberti v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 135 F. Supp. 2d 1298, 1302 (S.D.Fla. 2001) (viewing account statements coupled with concern over lack of increase in accounts' value sufficient "'storm warnings' to trigger duty to investigate") Goodman v. Shearson Lehman Bros., Inc., 698 F. Supp. 1078, 1082 (S.D.N.Y. 1988) (holding that plaintiff was on inquiry notice when plaintiff "received confirmations of... trades .. as well as account statements on a regular basis"); Appel v. Kidder, Peabody & Co., Inc., 628 F. Supp. 153, 157-58 (S.D.N.Y. 1986) (monthly statements and confirmations were sufficient to trigger duty to investigate even though not read); Holtzman v. Proctor, Cook & Co., Inc., 528 F. Supp. 9, 14 (D. Mass. 1981) (confirmation slips and monthly statements were sufficient to trigger duty to investigate) (collectively, the cases cited above are attached hereto as Exhibit M).

above-noted lack of reasonable diligence. See, e.g., Harris v. Diocese of Scranton, 79 Pa. D. & C.4[th] 464 (Pa.Com.Pl. 2006) ("the standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule also applies when a party is seeking to extend the limitations period under the fraudulent concealment exception"); Urland v. Merrell-Dow Pharmaceuticals, Inc., 822 F.2d 1268, 1272-74 (3d. Cir. 1987) (same reasonable diligence test applicable to discovery rule analysis is applicable to fraudulent concealment analysis) (Copies of the Harris and Urland cases are attached hereto as Exhibit N).

Claimant's undisputed contemporaneous knowledge of alleged losses through his undisputed receipt of account statements and confirmations coupled with his undisputed self-professed investment goals unequivocally triggered such a duty to investigate well before three years prior to the date of the filing of the Statement of Claim. Since as previously noted by the Cappelli court above, "[f]ailure to make inquiry when information is available **is failure to exercise reasonable diligence as a matter of law,**" Claimant's secondary, last ditch arguments also fail. As Pennsylvania law is crystal clear that neither the discovery rule nor fraudulent concealment are applicable under the facts of this matter, this matter should be dismissed with prejudice.

## V.   CONCLUSION

As Claimant's Opposition fails to directly challenge the Motion or even address any of the key cases cited therein,[4] Claimant's Opposition does little more than underscore the strength of the Motion and reinforce the fact that the Motion should be granted.   Accordingly, for the reasons set forth herein and in the Motion, Respondents respectfully request that the Panel dismiss this matter with prejudice.

Respectfully submitted,

Jason W. Gaarder
Associate General Counsel
Legg Mason & Co., LLC
100 Light Street, 32nd Floor
Baltimore, Maryland 21202
(410) 454-3321

Counsel for Respondent
Legg Mason Wood Walker, Incorporated

---

[4] In another example of Claimant's failure to respond to the substance of the Motion, the Motion clearly presented authority for the Respondents' positions  i) that the four year statute of limitations for contracts is inapplicable to this matter since Claimant is only attempting to masquerade this matter as a contract action because his other claims are time-barred and ii) that this Panel should apply a two year statute of limitations to Claimant's UTP/CPL claims because those claims sound in fraud and other courts have applied a two-year limitations period to UTP/CPL claims under similar circumstances.  Rather than address either of these arguments, Claimant simply chose to conclusorily state that the four year statute of limitations for contracts applies and that the statute of limitations for the UTP/CPL is six years.  Since Claimant failed in any way to substantively respond to Respondents' cited authorities on these two points, this Panel should accept Respondents' reasoned and well-supported positions and reject Claimant's conclusory assertions.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of April 2008, I served via overnight

mail, a copy of the foregoing Reply to Claimant's Response to Respondent's Motion to

Dismiss upon the following counsel of record:

> Arnold Y. Steinberg, P.C.
> Attorney at Law
> The Washington Plaza
> #1504
> 1420 Centre Avenue
> Pittsburgh, PA  15219
> Counsel for Claimant

Jason W. Gaarder

# EXHIBIT D



Dear Ms. Walsh;

The arbitrators in the above-noted action have made decisions on R's Motion to dismiss, as follows:

   1. The motion to dismiss regarding Elizabeth M. Wolf is granted and the record expunged regarding her.

   2. The arbitration panel has the right to entertain R's motion to dismiss.

   3. All counts of C's complaint are dismissed with the exception of the counts titled "Claim for Breach of Contract" and "Pennsylvania Unfair Trade Practice/Consumer Protection Laws".

In addition, there is to be no additional discovery nor are there to be briefs and motions filed (with the exception of motions analogous to Motions in Limine), without further order of this panel.

The hearings are scheduled, in Pittsburgh, PA. for August 18, 19 and 20 at a time and place to be designated by FINRA.

Please incorporate the above in an order to be circulated among the arbitrators. Please let me know if anything additional is required.

Sincerely,

Jay

**Jay Feldstein**

# EXHIBIT E

# The Arbitrator's Manual

January
2001

**A publication of
the Securities
Industry
Conference on
Arbitration**



# The

# Arbitrator's

# Manual

# January 2001

*This manual has been compiled by members of the Securities Industry Conference on Arbitration (SICA) as a guide for arbitrators. It is designed to supplement and explain the Uniform Code of Arbitration (UCA or Code) as developed by SICA. The procedures and policies contained in this manual may be altered by the arbitrators and should not be used to restrict a panel's discretion. Significant differences between the Uniform Code and the procedures of the SROs will be highlighted in this manual. Arbitrators should always consult the rules of the arbitration forum in which they are serving.*

# The Arbitrator's Manual

The Changing Role of Arbitration
in Securities Controversies . . . . . . . . . . . . . 3

The Challenge for a Self-Regulatory
Organization Arbitrator . . . . . . . . . . . . . . . . . 3

Duty to Disclose Conflicts . . . . . . . . . . . . . . 4

The Appearance of Bias . . . . . . . . . . . . . . . . 5

Ethical Responsibilities . . . . . . . . . . . . . . . . 6

Challenges to an Arbitrator . . . . . . . . . . . . . . 6

    Opinion and Bias . . . . . . . . . . . . . . . . . . . 7

    Business or Personal Relationships . . . . . . 8

    Previous or Current Involvement . . . . . . . . 8

    Financial Interest . . . . . . . . . . . . . . . . . . . 9

The Party Who Is Not Represented
by Counsel . . . . . . . . . . . . . . . . . . . . . . . . . 9

Representation by Counsel . . . . . . . . . . . . . 10

Prehearing Motions . . . . . . . . . . . . . . . . . . . 10

Prehearing Conference . . . . . . . . . . . . . . . . 14

Arbitrators' Power to Issue Orders . . . . . . . . 20

Before the Hearing . . . . . . . . . . . . . . . . . . . 22

At the Hearing . . . . . . . . . . . . . . . . . . . . . . 24

Function of the Arbitration Staff . . . . . . . . . 27

Executive Sessions . . . . . . . . . . . . . . . . . . 27

Hints for the Chair . . . . . . . . . . . . . . . . . . . 28

Admissibility of Evidence . . . . . . . . . . . . . . 29

Attendance of Witnesses at the Hearing . . . 31

Deliberations . . . . . . . . . . . . . . . . . . . . . . . 31

The Arbitrators' Award . . . . . . . . . . . . . . . . 36

Post-Award Procedure . . . . . . . . . . . . . . . . 37

Confidentiality of Arbitration Proceedings . . 39

Disciplinary Referrals . . . . . . . . . . . . . . . . . 39

Reference Books and Periodicals . . . . . . . . 41

Web Resources . . . . . . . . . . . . . . . . . . . . . 42

Appendix A: Code of Ethics for
Arbitrators in Commercial Disputes . . . . . . . 46

- remind the party that cross examination should consist of specific questions, or ensure that the party has had an opportunity to present all evidence.

All efforts to assist a party should be balanced against the need to remain impartial.

## Representation by Counsel

Parties need not be represented by an attorney in arbitration. They may choose to appear pro se (on their own) or be represented by a person who is not an attorney, such as a business associate, friend, or relative. The attorney-client privilege does not attach to communications between a party and a non-attorney representative. The Uniform Code grants parties the absolute right to representation by counsel at any stage of the proceeding. If a party decides during the course of a hearing that he or she wants to obtain legal representation, an adjournment should be granted to permit counsel to appear. Parties sometimes decide to change counsel during the course of a proceeding. Generally, the arbitrators should permit such changes.

## Prehearing Motions

Although arbitration is an informal process, a variety of matters may be the subject of prehearing motions, such as the appropriateness of arbitration, hearing locale, and postponements.

### Motions Regarding the Appropriateness of Arbitration

Any party may challenge the appropriateness of arbitration. A party may request that the arbitrators dismiss the arbitration and refer the parties to their remedies at law. One type of case

that may be appropriate for such a dismissal is a case in which claims are asserted against parties who have not agreed to arbitrate. Since such parties may not agree to participate in arbitration, a referral to legal remedies may avoid multiple proceedings and ultimately conserve legal resources.

### Motions to Dismiss Because of the Passage of Time

The Uniform Code contains an eligibility provision, which states that no dispute, claim, or controversy can be submitted to arbitration if six (6) years have elapsed from the occurrence or event giving rise to the claim. This time period may be extended by court proceedings. The arbitrators should also be aware that a statute of limitations may preclude the awarding of damages even though the claim is eligible for submission to arbitration.

### Motions to Sever or Consolidate Claims or Parties

The Uniform Code provides that the Director may determine preliminarily whether to join, consolidate, or sever various arbitration matters. All final determinations with respect to joinder, consolidation, or severance are made by the arbitration panel. When deciding such motions, arbitrators should consider commonality of time, parties, transactions, issues, or prejudice to any party. Each motion should be decided on its own merits.

The Uniform Code provides that persons may join in one action as claimants if they assert any right to relief jointly, severally, or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any